1

2

3

4                IN THE CIRCUIT COURT FOR THE STATE OF OREGON

5                    IN THE COUNTY OF MULTNOMAH

6  LAFAYE BURKHOLDER,                              )  Case No. 0510-10418
                                                   )
7              Plaintiff,                           )  SECOND AMENDED COMPLAINT
                                                   )  (Product Liability, and Negligence)
8          v.                                       )
                                                   )  DEMAND FOR JURY TRIAL
9  ASBESTOS CLAIMS MANAGEMENT                      )
   CORPORATION, a Delaware corporation,            )  CLAIM OVER $50,000.00
10 formerly known as National Gypsum Company,      )
   individually and as successor-in-interest to    )  CLAIM NOT SUBJECT TO
11 Goldbond Building Products, and Pacific          )  MANDATORY ARBITRATION
   Paperboard Products, Inc.; BRYAN STEAM, LLC,     )
12 a Delaware Corporation; C.H. MURPHY/            )  COMPLEX ASBESTOS LITIGATION
   CLARK-ULLMAN, INC., an Oregon corporation,      )  SUBJECT TO CASE MANAGEMENT
13 individually and as successor-in-interest to C.H. )  ORDER
   Murphy, Inc.; FEDERATED DEVELOPMENT             )
14 COMPANY, a New York corporation; GARLOCK        )
   SEALING TECHNOLOGIES, LLC, a Delaware           )
15 corporation, fka Garlock, Inc., individually and as )
   successor-in-interest to Coltec Industries, Inc.,   )
16 Fairbanks-Morse, Fairbanks Morse Engines,        )
   Belmont Packing & Rubber Co., Garlock Packing    )
17 Co., U.S. Gasket Co., Goodrich Corporation, and   )
   Enpro Industries, Inc.; GATKE CORPORATION,       )
18 an Illinois corporation, individually and as        )
   successor-in-interest to Asbestos Textile Company, )
19 Inc.; GENERAL ELECTRIC COMPANY, a New           )
   York corporation, individually and as successor-in- )
20 interest to Mattern X-ray, Hotpoint Electric       )
   Appliance Company Limited, Trumbull Electric     )
21 Manufacturing Company, G E Industrial Systems,    )
   Curtis Turbines, Parsons Turbines, and General    )
22 Electric Jet Engines; MACARTHUR COMPANY,         )
   a Minnesota corporation, individually and as       )
23 successor-in-interest to Western Asbestos Co;      )
   OWENS-ILLINOIS, INC., a Delaware corporation,    )
24 individually and as successor-in-interest to Owens- )
   Illinois Glass Company; PLANT INSULATION        )
25 COMPANY, a California corporation fka Asbestos    )
   Company of California and Plant Asbestos          )
26 Company; UNIROYAL HOLDING, INC., a New          )
   Jersey corporation, individually and as successor- )

Page 1 -   SECOND AMENDED COMPLAINT

J:\OR\104683\Pld\Cmp01-2nd amended.wpd

BRAYTON✢PURCELL, LLP
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR  97205
Telephone (503) 295-4931; Fax (503) 241-2573

8/15/06

1 in-interest to Uniroyal, Inc., and United States )
  Rubber Company; WESTERN ASBESTOS CO., a )
2 California corporation; and WESTERN )
  MACARTHUR COMPANY, a California )
3 corporation, individually and as successor-in- )
  interest to Western Asbestos Co., MacArthur )
4 Company, and Bay Cities Asbestos Company, )

5    Defendants. )

6

7 Plaintiff LaFaye Burkholder alleges:

8 <u>**FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS FOR RELIEF**</u>

9       1.

10   Plaintiff LaFaye Burkholder has contracted permanent asbestos-related injury and/or

11 disease, including, but not limited to, sub-clinical biologic response scarring and injury from

12 asbestos exposure, and mesothelioma.

13       2.

14   Plaintiff has sustained asbestos-related injuries and/or disease as a result of her inhalation

15 or ingestion of asbestos fibers through her exposure to asbestos.

16       3.

17   Plaintiff's asbestos-related disease was diagnosed no earlier than June 8, 2005.

18       4.

19   Plaintiff has been exposed to asbestos fibers in her work, home, and/or other

20 environments when she used and/or disturbed asbestos and asbestos-containing products of the

21 defendants and conspirators, and/or when she otherwise contacted asbestos and asbestos-

22 containing products of the defendants and conspirators which had been used and/or disturbed by

23 other individuals. That use and/or disturbance released respirable asbestos fibers that are capable

24 of causing physical damage, injury, or disease and/or cancer if inhaled or ingested by individuals,

25 including plaintiff, and which, upon indiscriminate workplace release, contaminated work sites,

26 clothes, equipment, and other aspects of plaintiff's work, travel, home, and other environments.

Page 2 -  SECOND AMENDED COMPLAINT
  J:\OR\104683\Pld\Cmp01-2nd amended.wpd

**BRAYTON✦PURCELL, LLP**
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR  97205
Telephone (503) 295-4931; Fax (503) 241-2573

1                                         5.

2          As a direct and proximate result of defendants' and conspirators' tortious conduct and

3   plaintiff's exposure to the unreasonably dangerous and defective asbestos-containing products

4   manufactured, distributed, sold, installed, and/or applied by defendants and conspirators or

5   containing the defendants' and conspirators' asbestos fiber, plaintiff contracted asbestos-related

6   injury and/or disease as set forth herein, and has incurred and/or will incur doctor, hospital,

7   custodial and medical expenses in an amount, according to proof at trial, of $200,000.00.

8                                         6.

9          As a further direct and proximate result of defendants' and conspirators' tortious conduct

10  and plaintiff's exposure to the unreasonably dangerous and defective asbestos-containing

11  products manufactured, distributed, sold, installed, and/or applied by defendants and conspirators

12  and/or containing the defendants' and conspirators' asbestos fiber, plaintiff has incurred and/or

13  will incur loss of past and future pension and/or past and future impairment of wage-earning

14  capacity and loss of home services, all to her economic damage, according to law and proof at

15  trial, of $200,000.00.

16                                        7.

17         As a further direct and proximate result of defendants' and conspirators' tortious conduct

18  and plaintiff's exposure to the unreasonably dangerous and defective asbestos-containing

19  products manufactured, distributed, sold, installed, and/or applied by defendants and conspirators

20  or containing defendants' and conspirators' asbestos fiber, plaintiff has contracted progressive

21  asbestos-related injury and/or disease, from which she has suffered, and continues to suffer, pain,

22  discomfort, fear, and interference with her daily activities and enjoyment of, and quality of life,

23  and has endured, and will continue to endure mental and emotional pain and suffering, all of

24  which is permanent, all to her non-economic damage in an amount, according to law and proof at

25  trial, of $2,000,000.00.

26  ///

Page 3 -   SECOND AMENDED COMPLAINT
           J:\OR\104683\Pld\Cmp01-2nd amended.wpd

BRAYTON✦PURCELL, LLP
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR  97205
Telephone (503) 295-4931; Fax (503) 241-2573

1          **THE PARTIES**

2                                8.

3          At all times material herein, plaintiff has been a resident of the state of Oregon.

4                                9.

5          At all times material herein, plaintiff was exposed to airborne asbestos fibers in the

6    course and scope of her work or in her home or other environments. Attached hereto as Exhibit 1

7    is plaintiff's work history and exposure, which is incorporated herein by reference.

8                                10.

9          a.        At all times material herein, defendant Asbestos Claims Management

10   Corporation, a Delaware corporation, and its "alternate entities," identified *infra*, was engaged in

11   the manufacture, distribution, and sale of hazardous asbestos-containing products, including

12   insulation and building materials.

13         b.        At all time material herein, Defendant Bryan Steam, LLC, a Delaware

14   Corporation and its "alternate entities," identified *infra*, was engaged in the design, manufacture,

15   sale, and repair of hazardous asbestos-containing turbines, pumps, boilers, furnaces, refractory

16   products, kilns, and related equipment including insulation, rope and gaskets.

17         c.        At all times material herein, defendant C.H. Murphy/Clark-Ullman, Inc., an

18   Oregon corporation, and its "alternate entities," identified *infra*, was engaged in the manufacture,

19   distribution, sale, installation, and maintenance of hazardous asbestos-containing products,

20   including insulation, refractory bricks, plastics, castables, and mortars.

21         d.        At all times material herein, Defendant Federated Development Company, a New

22   York corporation, and its "alternate entities," identified *infra*, was engaged in the design,

23   manufacture, sale, and repair of hazardous asbestos-containing Pacific boilers, furnaces,

24   refractory products, and related equipment including rope and gaskets.

25         e.        At all times material herein, defendant Garlock Sealing Technologies, LLC, fka

26   Garlock, Inc., a Delaware corporation, and its "alternate entities," identified *infra*, was engaged

Page 4 -   SECOND AMENDED COMPLAINT
           J:\OR\104683\Pld\Cmp01-2nd amended.wpd

1    in the manufacture, distribution and sale of hazardous asbestos-containing products, including

2    gaskets, sheet gasket material, packing, tape, valve rings, rope, engines, pumps, industrial brake

3    linings; the sale and supply of raw asbestos fiber used in the manufacture of various hazardous

4    asbestos-containing products; and the conspiratorial activities as described within this Complaint.

5         f.      At all times material herein, defendant Gatke Corporation, an Illinois corporation,

6    and its "alternate entities," identified *infra*, was engaged in the conspiratorial activities as

7    described within this Complaint.

8         g.      At all times material herein, defendant General Electric Company, a New York

9    corporation, and its "alternate entities," identified *infra*, was engaged in the design, manufacture,

10    distribution, supply, and sale of hazardous asbestos-containing products, including switch boards,

11    switch gears, circuit breakers, electrical panels, cable, wire and related equipment.

12         h.      At all times material herein, defendant MacArthur Company, a Minnesota

13    corporation, and its "alternate entities," identified *infra*, was engaged in the manufacture, supply

14    and distribution of hazardous asbestos-containing products, including insulation and building

15    materials.

16         i.      At all times material herein, defendant Owens-Illinois, Inc., a Delaware

17    corporation, and its "alternate entities," identified *infra*, was engaged in the sale and supply of

18    raw asbestos fiber used in the manufacture of various hazardous asbestos-containing products;

19    the manufacture, distribution and sale of hazardous asbestos-containing products, including

20    pipecovering and block; and the conspiratorial activities as described within this Complaint.

21         j.      At all times material herein, defendant Plant Insulation Company, a California

22    corporation, and its "alternate entities," identified *infra*, was engaged in the manufacture and

23    distribution of hazardous asbestos-containing products, including pipe covering, block, cement,

24    cloth, and gaskets.

25         k.      At all times material herein, defendant Uniroyal Holding, Inc., a New Jersey

26    corporation, and its "alternate entities," identified *infra*, was engaged in the design, manufacture,

J:\OR\104683\Pld\Cmp01-2nd amended.wpd

BRAYTON✦PURCELL, LLP
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR  97205
Telephone (503) 295-4931; Fax (503) 241-2573

1    distribution and sale of hazardous asbestos-containing products, including yarns, textiles, tapes,

2    rocket motor shields, and mechanical rubber products.

3          l.        At all times material herein, defendant Western Asbestos Co., a California

4    corporation, was engaged in the manufacture, supply, distribution and abatement of hazardous

5    asbestos-containing products, including pipe cover and block insulation.

6          m.       At all times material herein, defendant Western MacArthur Company (formerly

7    Western Asbestos), a California corporation, and its "alternate entities," identified *infra*, was

8    engaged in the manufacture, supply and distribution of hazardous asbestos-containing products,

9    including pipe cover and block insulation.

10                                          11.

11          At all times herein mentioned, each of the defendants listed below was the successor,

12    successor in business, successor in product line or a portion thereof, assign, alter ego, agent,

13    predecessor, predecessor in business, predecessor in product line or a portion thereof, parent,

14    affiliate, subsidiary, wholly or partially owned by, or the whole or partial owner of, or member

15    in, an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling,

16    assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting,

17    servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding,

18    manufacturing for others, packaging, advertising, or otherwise involved with a certain product,

19    namely asbestos, and other products containing asbestos. Said entities shall hereinafter

20    collectively be called "alternate entities." Each defendant is liable under the law for the tortious

21    conduct of each successor, successor in business, successor in product line or a portion thereof,

22    assign, predecessor in product line or a portion thereof, parent, affiliate, subsidiary, whole or

23    partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded,

24    that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled,

25    distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed,

26    contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others and

Page 6 -  SECOND AMENDED COMPLAINT
J:\OR\104683\Pld\Cmp01-2nd amended.wpd

BRAYTON❖PURCELL, LLP
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR  97205
Telephone (503) 295-4931; Fax (503) 241-2573

1   advertised asbestos, and other products containing asbestos. The following defendants, and each

2   of them, are liable under the law for the acts of each and every "alternate entity," in that the

3   defendants exercised control over the alternate entities; the defendants expressly or impliedly

4   authorized the alternate entities to act for defendants; the defendants expressly or impliedly

5   agreed to assume the liabilities of the each such "alternate entity;" the transaction between

6   defendants and each such "alternate entity" amounted to a consolidation or merger of the entities;

7   defendants were a mere continuation under the law of each such "alternate entity;" and/or

8   defendants and each such alternate entity entered into the transaction that joined them to escape

9   liability. In addition, or in the alternative, the following defendants, and each of them, are liable

10  under the law for the acts of each and every "alternate entity," in that there has been a virtual

11  destruction of plaintiff's remedy against each such "alternate entity;" defendants have acquired

12  the assets, product line, or a portion thereof, of each such "alternate entity;" such "alternate

13  entity," defendants, and each of them, caused the destruction of plaintiff's remedy against each

14  such "alternate entity;" each such defendant has the ability to assume the risk-spreading role of

15  each such "alternate entity;" and that each such defendant enjoys the goodwill originally attached

16  to each such "alternate entity."

| DEFENDANT | ALTERNATE ENTITY(IES) (ALTER EGOS) |
|---|---|
| ASBESTOS CLAIMS MANAGEMENT CORPORATION | NATIONAL GYPSUM COMPANY<br>GOLDBOND BUILDING PRODUCTS<br>PACIFIC PAPERBOARD PRODUCTS, INC. |
| BRYAN STEAM, LLC | BRYAN STEAM CORPORATION<br>BRYAN BOILER |
| C.H. MURPHY/CLARK ULLMAN INC. | C.H. MURPHY, INC. |
| FEDERATED DEVELOPMENT COMPANY | PACIFIC STEEL BOILER CORPORATION<br>NATIONAL-U.S. RADIATOR CORPORATION |
| GARLOCK SEALING TECHNOLOGIES, LLC | GARLOCK, INC.<br>COLTEC INDUSTRIES, INC.<br>FAIRBANKS-MORSE<br>FAIRBANKS MORSE ENGINES<br>BELMONT PACKING & RUBBER CO.<br>GARLOCK PACKING CO.<br>U.S. GASKET CO. |

Page 7 -   SECOND AMENDED COMPLAINT

J:\OR\104683\Pld\Cmp01-2nd amended.wpd

BRAYTON◆PURCELL, LLP
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR  97205
Telephone (503) 295-4931; Fax (503) 241-2573

| | DEFENDANT | ALTERNATE ENTITY(IES) (ALTER EGOS) |
|---|---|---|
| 1 | GARLOCK (Continued) | GOODRICH CORPORATION |
| 2 | | ENPRO INDUSTRIES, INC. |
| 3 | GATKE CORPORATION | ASBESTOS TEXTILE COMPANY, INC. |
| 4 | GENERAL ELECTRIC COMPANY | MATTERN X-RAY |
| | | HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED |
| 5 | | TRUMBULL ELECTRIC MANUFACTURING COMPANY |
| | | G E INDUSTRIAL SYSTEMS |
| 6 | | CURTIS TURBINES |
| | | PARSONS TURBINES |
| 7 | | GENERAL ELECTRIC JET ENGINES |
| 8 | MACARTHUR COMPANY | WESTERN ASBESTOS CO. COMPANY |
| | | WESTERN MAC ARTHUR |
| 9 | | BAY CITIES ASBESTOS COMPANY |
| 10 | OWENS-ILLINOIS, INC. | OWENS-ILLINOIS GLASS COMPANY |
| 11 | PLANT INSULATION COMPANY | ASBESTOS COMPANY OF CALIFORNIA |
| | | PLANT ASBESTOS COMPANY |
| 12 | UNIROYAL HOLDING, INC. | UNIROYAL, INC. |
| 13 | | UNITED STATES RUBBER COMPANY |
| 14 | WESTERN MAC ARTHUR | WESTERN ASBESTOS CO. |
| | COMPANY | MAC ARTHUR COMPANY |
| 15 | | BAY CITIES ASBESTOS COMPANY |

16

17                                                12.

18        At all times material herein, each of the defendants, with the exception of Metropolitan

19   Life Insurance Company, has been regularly engaged in the business of manufacturing,

20   designing, processing, marketing, distributing, supplying, applying and/or selling asbestos fiber,

21   or other products containing asbestos fiber, for use in construction, insulation, fireproofing, and

22   other uses in the construction, renovation, repair, and/or maintenance of buildings, yards,

23   industrial plants, facilities, equipment and/or vessels. One or more of the same defendants has

24   engaged in the mining, milling, supply and sale of asbestos fiber. Defendants designed,

25   manufactured, sold, distributed, applied and/or rebranded for sale asbestos-containing products

26   used in the construction, maintenance, and/or repair of vessels, structures, fixtures, and/or

Page 8 -   SECOND AMENDED COMPLAINT
I:\OR\104683\Pld\Cmp01-2nd amended.wpd

1  equipment at locations where plaintiff was employed or worked as set forth in the attached

2  Exhibit 1 or in other locations according to proof at trial.

3                                      13.

4         At all times material to this action, which includes not only the period of plaintiff's

5  exposure, but also includes a period beginning in approximately 1929 and continuing thereafter,

6  defendant Metropolitan Life Insurance Company, and others, at the request of and as part of its

7  business service to one or more of its insurance customers which engaged in asbestos-related

8  business, conducted, either directly through its own employees or indirectly through

9  commissioned studies, medical research, medical investigations, medical studies, and collection

10 of medical epidemiological data concerning the disease-producing capabilities of asbestos and

11 asbestos-containing materials. Defendant Metropolitan Life Insurance Company provided to

12 asbestos-related industries the results of such investigation and studies and medical knowledge

13 which they had accumulated, either by direct transmittal to companies engaged in asbestos-

14 related business or indirectly by dissemination of the information. This transmittal and

15 dissemination of information went to a variety of industrial companies and individuals, including

16 the defendants and conspirators named herein. Medical investigation, studies, and information

17 developed from the activities of defendant Metropolitan Life Insurance Company, as described

18 herein, included substantial evidence of the injurious and disease-producing capability of

19 asbestos and asbestos-related products. After collection and controlled dissemination of the

20 medical information and data, as described above, which collection and controlled dissemination

21 occurred in the 1930s and 1940s, defendant Metropolitan Life Insurance Company and others

22 thereafter engaged in a continuous and consistent course of conduct suppressing, minimizing,

23 understating, denying, and otherwise purposefully corrupting the evidence of injurious and

24 disease-causing properties of asbestos and asbestos-related materials.

25                                      14.

26        Many defendants have put their profits first and public health last for years. Having long

Page 9 -   SECOND AMENDED COMPLAINT
           J:\OR\104683\Pld\Cmp01-2nd amended.wpd

BRAYTON◆PURCELL, LLP
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR   97205
Telephone (503) 295-4931; Fax (503) 241-2573

1   ago learned of the hazards of asbestos in their products, these defendants suppressed what they

2   knew, participated in industry concealment of asbestos dangers, and are responsible for massive,

3   indiscriminate exposure to asbestos of countless innocent workers and consumers throughout

4   North America and around the world. These defendants were driven by their pursuit of higher

5   profit margins and increased market share. These defendants made decisions about the

6   manufacture, distribution, sale, and/or supply of their products based upon financial rather than

7   safety considerations. Rather than attempt to lower the levels of asbestos fibers emitted when

8   their products were used, these defendants sought to have the allowable levels altered, without

9   regard for the injurious effects that this would have on those exposed to their products, as there

10  could be no doubt that large numbers of workers and consumers would suffer debilitating,

11  incurable, and fatal illnesses because of exposure to these defendants' asbestos products. These

12  defendants' indifference to the health, safety, and welfare of workers and consumers was

13  conscious and spanned decades.

14                                          15.

15         At all times relevant to this action, the defendants conducted regular, sustained and not

16  isolated business activity in the state of Oregon.

17  **FACTUAL ALLEGATIONS SUPPORTING VICARIOUS LIABILITY**

18               **(Concert of Action, Aiding and Assisting, Conspiracy)**

19                                          16.

20         The term "conspirators" as used herein refers to: Metropolitan Life Insurance Company

21  [MET LIFE]; Anthony Lanza, M.D.; Johns-Manville [MANVILLE]; Owens Illinois; Owens

22  Corning Fiberglass; Raybestos-Manhattan [RAYBESTOS], now Raymark Industries, Inc.

23  [RAYMARK]); The Bendix Corporation [BENDIX] (Bendix Products Automotive Division,

24  Bendix Products Division, Bendix Aviation Corp., Bendix Home Systems, Allied Corporation,

25  Allied Chemical Corporation, Honeywell, Inc., Honeywell Controls, General Chemical

26  Corporation, FRAM, Friction Materials of Los Angeles, North American Refractories Company,

Page 10 – SECOND AMENDED COMPLAINT
F:\OR\104683\PldCmp01-2nd amended.wpd

BRAYTON❖PURCELL, LLP
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR  97205
Telephone (503) 295-4931; Fax (503) 241-2573

1   Em Sector Holdings Inc., Boylston Corporation, Ehrhart & Associates, Inc., Ehrhart & Arthur,

2   Inc., and Universal Oil Products Company), now Honeywell International, Inc., formerly known

3   as AlliedSignal, Inc. and as Allied-Signal; United States Gypsum Company [USG]); American

4   Brakeblock Corporation, now Pneumo Abex Corporation [PNEUMO ABEX]); T&N LTD

5   [T&N]); Gatke Corporation [GATKE]; Saranac Laboratory; Dr. Arthur Vorwald; as well as all of

6   the former members of the Asbestos Textile Institute [ATI], including: American Asbestos

7   Textile Co. (became Amatex), Keasbey & Mattison Co., Southern Asbestos Co., Union Asbestos

8   and Rubber Co., Asbestos Corporation, Ltd., Asten-Hill Manufacturing Co. (now Asten Group,

9   Inc.), Bell Asbestos Mines, Ltd., Cape Asbestos Company, Ltd., Cassiar Asbestos Corp. (became

10   Ontario Research Foundation), Garlock Packing Co., H.K. Porter Company, Johnson's Co., Ltd.,

11   Lake Asbestos of Quebec, Ltd., Nicolet Industries, Inc., Nippon Asbestos Co., Ltd., Tallman-

12   McCluskey Fabrics Co., United States Rubber Co. (became Uniroyal), A.S.T.M., American

13   Smelting & Refining Co., Asarco, Inc., Asbestos Textil, S.A., Asbestos Textile Company, Inc.,

14   Atlas Textile Co., BBA Group, Ltd., British Belting and Asbestos, Ltd., English Asbestos

15   Company, Ltd., General Electric Co., Manufacturas Miltiples, S.A., National Gypsum Co., North

16   American Asbestos Corp., Small & Parkes, Ltd., Societe Anonyme Francaise Du Ferodo,

17   American Society for Testing and Materials, Amiante de Sherbrooke Ltee, Asahi Asbestos Co.,

18   Asberit S.A., Asbestos Corporation Service Limited, Carolina Asbestos Co., FRL/AN Albany

19   International Co., Hilados Y Tejidos De Asbesto, S.A., J. Franklin Burke & Co., National

20   Asbestos Mines, Ltd., Nicotex Inc., Philadelphia Asbestos Co., Societe Francaise De l'Amiante;

21   all members of the Industrial Hygiene Foundation [IHF], including United States Mineral

22   Products Company; all members of the Gypsum Association, including American Gypsum Co.,

23   Georgia Pacific Corp., Grand Rapids Gypsum Co., Kaiser Gypsum Co., Inc., National Gypsum

24   Co. (and Gold Bond Building Products, a division of National Gypsum), Temple Gypsum Co.,

25   Texas Gypsum Co., The Celotex Corp., The Flintkote Co., and The Ruberoid Co.

26                  17.

J:\OR\104683\Pld\Cmp01-2nd amended.wpd

BRAYTON◆PURCELL, LLP
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR 97205
Telephone (503) 295-4931; Fax (503) 241-2573

1    Under Oregon law, all conspirators identified above in paragraph 16 are vicariously liable

2  for plaintiff's exposure to products manufactured, distributed, and/or supplied by all other

3  defendants and conspirators. Asten Group, Inc., in particular and for example, is liable under

4  Oregon law for plaintiff's exposure to products other than its dryer felts, including asbestos pipe

5  and boiler insulation manufactured, sold, or supplied by Asten Group, Inc.'s co-conspirators in

6  the ATI, including Johns-Manville and Raybestos-Manhattan, among others.

7                                          18.

8    Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned,

9  the conspirators were and are individuals or corporations organized and existing under and by

10  virtue of the laws of the State of Oregon, or the laws of some other state or foreign jurisdiction,

11  and that the company defendants were and are authorized to do and/or were and are doing

12  business in the State of Oregon, and that said defendants regularly conducted and/or conducts

13  business in the County of Multnomah, State of Oregon.

14                                          19.

15    Plaintiff was exposed to asbestos-containing dust created by the use of the asbestos

16  products manufactured, distributed and/or supplied by one or more of the defendants and

17  conspirators, which exposures caused plaintiff's asbestos-related disease and injuries as herein

18  set forth.

19                                          20.

20    The conspirators, individually and as agents of one another and as co-conspirators aided

21  and assisted each other and/or defendants and agreed and conspired among themselves, with

22  other asbestos manufacturers and distributors, and with Vandiver Brown, Dr. Anthony Lanza,

23  and MET LIFE to suppress material information concerning hazards of breathing asbestos,

24  supply defective products and/or otherwise conduct themselves so as to fail to avoid injury to

25  others or to injure the plaintiff in the following fashion (the following is not an exclusive or

26  comprehensive list of the wrongful acts of the defendants and conspirators but a representative

Page 12 - SECOND AMENDED COMPLAINT
J:\OR\104683\Pld\Cmp01-2nd amended.wpd

BRAYTON✦PURCELL, LLP
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR  97205
Telephone (503) 295-4931; Fax (503) 241-2573

1   sample list of some examples):

2          a.          Beginning in 1929, MET LIFE entered into agreements with MANVILLE and

3   others to fund studies of the affects of asbestos exposure on Canadian asbestos miners. When the

4   data from these studies proved that Canadian asbestos miners were developing asbestosis, MET

5   LIFE, MANVILLE, and others suppressed its publication; further, Dr. Lanza (then a MET LIFE

6   employee) actively misrepresented the results of the Canadian study for many years thereafter to

7   meetings of health care professionals seeking information regarding asbestos exposure.

8          b.          In approximately 1934, conspirators MANVILLE and MET LIFE, through their

9   agents, attorney Vandiver Brown and attorney J.C. Hobart, and conspirator RAYBESTOS (now

10  RAYMARK), through its agents, Sumner Simpson and J. Rohrbach, suggested to Dr. Lanza,

11  Associate Director, MET LIFE (insurers of MANVILLE and RAYBESTOS), that Lanza publish

12  a study on asbestosis in which Dr. Lanza would affirmatively misrepresent material facts and

13  conclusions about asbestos exposure, including but not limited to descriptions of the seriousness

14  of the disease process. On December 21, 1934, Vandiver Brown sent to Dr. Lanza a draft of

15  MET LIFE's preliminary study entitled "Effects of Inhalation of Asbestos Dust Upon the Lungs

16  of Asbestos Workers," which was accompanied by a letter requesting that Dr. Lanza edit the

17  study before publication such that the aspects of the study that were "undesirable from the

18  industry viewpoint" were intentionally de-emphasized or otherwise misrepresented. As indicated

19  by a letter written on December 24, 1934 by Vandiver Brown to M.F. Judd, of Raybestos-

20  Manhattan, Vandiver Brown also sent a draft of the preliminary study to M.F. Judd. This letter

21  also informed M.F. Judd that Vandiver Brown had edited the study by making "additions,

22  omissions or changes in phraseology that will be beneficial from the Industry viewpoint."

23  Vandiver Brown noted that "The interest of your company in the Report is identical to that of

24  Johns-Manville and it, therefore, follows that whatever we may be able to accomplish will be for

25  the benefit of both." The misrepresentation was accomplished through strategic editing and word

26  smithing, as well as intentional deletion of Dr. Lanza's description of asbestosis as "fatal" and

Page 13 - SECOND AMENDED COMPLAINT

J:\OR\104683\Pld\Cmp01-2nd amended.wpd

BRAYTON✛PURCELL, LLP
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR  97205
Telephone (503) 295-4931; Fax (503) 241-2573

1     through other selective editing that affirmatively distorted and misrepresented asbestosis as a

2     process less serious than it was known to be by the conspirators. As a result, Dr. Lanza's study

3     was published in the medical literature containing said misleading statements in 1935. The

4     conspirators were motivated, in part, to effectuate this fraudulent misrepresentation and

5     fraudulent nondisclosure by the desire to influence proposed legislation to regulate asbestos

6     exposure, to provide a defense in lawsuits involving, among others, MANVILLE, RAYBESTOS

7     (now RAYMARK), and MET LIFE, as insurer, and to promote the widespread and lucrative use

8     of their asbestos or asbestos containing products for their profit.

9         c.       On October 1, 1935 Sumner Simpson, then president of Raybestos-Manhattan,

10    sent a letter to Vandiver Brown discussing his correspondence with the trade magazine

11    "Asbestos" and his attempts to discourage the magazine from publishing British articles that

12    discussed asbestos dust control and asbestosis.

13         d.      The above-described conspiracy continued in 1936, when additional co-

14    conspirators American Brakeblock Corporation (now PNEUMO ABEX), Asbestos

15    Manufacturing Company, GATKE, MANVILLE, T&N, RAYBESTOS (now RAYMARK),

16    Russell Manufacturing (whose liabilities have been assumed by H.K. Porter Company), Union

17    Asbestos and Rubber Company, and USG, entered into an agreement with a leading medical

18    research facility named Saranac Laboratories. Under the agreement, the conspirators acquired the

19    power to decide what information Saranac Laboratories could publish regarding test results and

20    asbestos disease and could also control in what form such publications were to occur. Their

21    agreement to suppress, misrepresent, or otherwise distort medical and scientific understanding of

22    asbestos pathology provided these conspirators the power and ability to affirmatively

23    misrepresent the results of the work at Saranac, and also gave these conspirators power to meet,

24    respond to, or otherwise rebuff material facts included in any study. On numerous occasions

25    thereafter, the conspirators exercised their power to prevent Saranac scientists from disclosing

26    material scientific data, resulting in widespread dissemination of misinformation regarding the

Page 14 - SECOND AMENDED COMPLAINT
J:\ORU\04683\Pld\Cmp01-2nd amended.wpd

BRAYTON❖PURCELL, LLP.
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR  97205
Telephone (503) 295-4931; Fax (503) 241-2573

1    health affects of asbestos exposure, including at scientific, industrial, and governmental

2    meetings.

3          e.      In furtherance of the conspiracy, the conspirators exerted their position, influence,

4    and organized efforts to influence the establishment of "Threshold Limit Values" (TLVs) for

5    asbestos exposure. In 1938 the U.S. Department of Treasury published a Public Health Bulletin

6    by Dr. Dreesen, entitled, "A Study of Asbestosis in the Asbestos Textile Industry," in which Dr.

7    Dreesen, himself a victim of the co-conspirators misrepresentations and false information,

8    concluded, tentatively, that 5mppcf of asbestos particles was a level of exposure at which the

9    majority of exposed workers would not develop clinical asbestos-related disease in their

10   lifetimes. The conspirators materially and fraudulently manipulated this study, which played a

11   significant role in the process of establishing the asbestos TLV by the American Conference of

12   Government Industrial Hygienists (ACGIH). In subsequent years, the conspirators discouraged

13   reevaluation or scientific scrutiny or testing of the TLV and actively attempted to influence the

14   value of the asbestos guideline by deliberately concealing and suppressing data available to them

15   regarding the full scope of the health effects associated with the inhalation of asbestos fibers and

16   the inadequacies of the TLV for protection of workers. For example, studies performed in the

17   1930's by MET LIFE at the request of MANVILLE indicated that the guideline needed to be well

18   below 5 mppcf, yet the studies were never published.

19          f.      The conspiracy was furthered when, on November 11, 1948, representatives of the

20   following conspirators met at MANVILLE headquarters: MANVILLE, American Brakeblock

21   Division of American Brake and Shoe Foundry (now PNEUMO ABEX), GATKE, T&N,

22   RAYBESTOS (now RAYMARK), Thermoid Company (whose assets and liabilities were later

23   purchased by H.K. Porter Company), Union Asbestos and Rubber Company, USG, and MET

24   LIFE. USG did not send a company employee to the meeting, but instead authorized attorney

25   Vandiver Brown of MANVILLE to represent its interest at the meeting and to take action on

26   its behalf.

Page 15 - SECOND AMENDED COMPLAINT

J:\ORU\04683\Pld\Cmp01-2nd amended.wpd

BRAYTON✦PURCELL, LLP
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR  97205
Telephone (503) 295-4931; Fax (503) 241-2573

1   g.  At the November 11, 1948 meeting, these conspirators and their representatives

2 decided to exert their position, influence, and organized efforts to materially alter, distort, and

3 otherwise corrupt and misrepresent material facts about the substance of research conducted by

4 Dr. Leroy Gardner at the Saranac Laboratories beginning in 1936, which research involved and

5 demonstrated the carcinogenicity of asbestos in mice and also included an evaluation of the

6 health effects of asbestos on humans.

7   h.  At this meeting, these conspirators intentionally and affirmatively decided that Dr.

8 Gardner's work should be edited to delete material facts about the cancer-causing propensity of

9 asbestos, the health effects of asbestos on humans, and the critique of the promulgated dust

10 thresholds. The conspirators then published these deceptive and fraudulent statements in the

11 medical literature as edited by Dr. Vorwald. These conspirators thereby fraudulently

12 misrepresented the genuine risks of asbestos exposure to the public, in general, and the class of

13 persons exposed to asbestos, including the plaintiff, in specific.

14   i.  As a direct result of influence exerted by the conspirators, Dr. Vorwald published

15 Dr. Gardner's edited work in the <u>Journal of Industrial Hygiene, AMA Archives of Industrial</u>

16 <u>Hygiene and Occupational Health</u> in 1951 in a form that stressed those portions of Dr. Gardner's

17 work that the conspirators wished stressed, but which omitted reference to human asbestosis and

18 cancer, thereby materially, fraudulently, and affirmatively distorting and misrepresenting the

19 extent of the risks. The conspirators affirmatively and deliberately disseminated this deceptive

20 and fraudulent Vorwald publication to university libraries, government officials, agencies,

21 and others.

22   j.  Such actions constitute a material, affirmative misrepresentation of the material

23 facts involved in Dr. Gardner's work and resulted in creating and fostering an appearance that

24 inhalation of asbestos was less of health problem, danger, or risk than Dr. Gardner's unedited

25 work indicated.

26   k.  When Dr. Vorwald subsequently tried to publish more complete information

Page 16 - SECOND AMENDED COMPLAINT

J:\OR\104683\Pld\Cmp01-2nd amended.wpd

BRAYTON✦PURCELL, LLP
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR  97205
Telephone (503) 295-4931; Fax (503) 241-2573

1    regarding Dr. Gardner's animal studies, the conspirators required his discharge from the Saranac

2    Laboratories, denied him permission to publish or complete Dr. Gardner's work, and actively

3    prohibited institutions of higher learning from hiring or retaining Dr. Vorwald in any capacity.

4         l.    The following conspirators were members of the trade association known as

5    Quebec Asbestos Mining Association (Q.A.M.A.): MANVILLE; Carey-Canada, individually and

6    as successor to Quebec Asbestos corporation; the Celotex Corp., successor to Quebec Asbestos

7    Corp.; National Gypsum Co.; and T&N, individually and successor to Bell Asbestos. These

8    conspirators, members of Q.A.M.A., participated in the above-described distortion and

9    misrepresentation of the work of Dr. Gardner published by Dr. Vorwald in the AMA Archives of

10    Industrial Health in 1951, through, among other things, close monitoring of the editing process

11    by Q.A.M.A.'s representative, Ivan Sabourin, acting on behalf of all Q.A.M.A. members.

12         m.    As a furtherance of the conspiracy commenced in 1929, conspirators who were

13    members of the Q.A.M.A. as described above began in or about 1950 to formulate a plan to

14    influence public opinion about the relationship between asbestos and cancer by influencing the

15    medical literature on this subject and then touting and disseminating this literature to the public

16    and to organizations and legislative bodies responsible for regulatory control of asbestos with the

17    specific intent of misrepresenting the existing scientific information and suppressing contrary

18    scientific data in their possession and control.

19         n.    This plan of misrepresentation and influence over the medical literature began on

20    or about 1950 when the aforementioned Q.A.M.A. members selected Saranac Laboratories to do

21    an evaluation of whether cancer was related to asbestos. After a preliminary report authored by

22    Dr. Vorwald in 1952 indicated that a cancer/asbestos relationship might exist in experimental

23    animals, these Q.A.M.A. members refused to further fund the study, terminated the study, and

24    prevented any public discussion or dissemination of the results.

25         o.    As a result of the termination of the Q.A.M.A./Saranac study, the conspirators

26    fraudulently withheld information from the public and affirmatively misrepresented to the public

Page 17 - SECOND AMENDED COMPLAINT

BRAYTON❖PURCELL, LLP
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR  97205
Telephone (503) 295-4931; Fax (503) 241-2573

1    and legislative and regulatory bodies that asbestos did not cause cancer, including affirmative

2    misrepresentations by conspirators and conspirators' agents K.W. Smith, M.D., Paul Cartier,

3    M.D., Dr. Vorwald, Dr. Lanza, Vandiver Brown, and Ivan Sabourin. Said misrepresentations

4    were directed to *inter alia*, U.S. Government officials, Canadian government officials, U.S.

5    National Cancer Institute, medical organizations, health professionals, and the general public,

6    including plaintiff.

7        p.    Subsequently, the Q.A.M.A. conspirators contracted with the IHF and Dr. Daniel

8    Braun to further study the relationship between asbestos exposure, asbestosis and lung cancer. In

9    1957, Drs. Braun and Truan reported to the Q.A.M.A. that asbestosis did increase a worker's risk

10   of incurring lung cancer.

11       q.    The Q.A.M.A. conspirators, as a furtherance of the conspiracy commenced in

12   1929, caused in 1958 a publication of the work by Drs. Braun and Truan in which the findings

13   regarding increased incidence of cancer in persons with asbestosis was edited out by agents of the

14   Q.A.M.A. The published version of the study by Drs. Braun and Truan contained a conclusion

15   that asbestos exposure, alone, did not increase the incidence of lung cancer, a conclusion known

16   by the conspirators to be false.

17       r.    By falsifying, corrupting, and causing publication of studies concluding that

18   asbestos exposure did not cause lung cancer and simultaneously omitting documented findings

19   that asbestosis did increase the risk of lung cancer, the conspirators affirmatively distorted and

20   misrepresented to the public and concealed from the public the true nature and extent of risks

21   associated with inhalation or ingestion of asbestos fibers.

22       s.    In furtherance of the ongoing conspiracy, in approximately 1958, these Q.A.M.A.

23   conspirators publicized the fraudulently edited works of Drs. Braun and Truan at a symposium in

24   an effort to fraudulently misrepresent to the public and persons exposed to asbestos that the

25   inhalation of asbestos dust would not cause cancer.

26       t.    The fraudulent misrepresentations beginning in 1929, as elaborated above, and

Page 18 - SECOND AMENDED COMPLAINT
J:\OR\104683\Pld\Cmp01-2nd amended.wpd

BRAYTON✦PURCELL, LLP
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR  97205
Telephone (503) 295-4931; Fax (503) 241-2573

1   continuing with the publication of the 1958 study by Drs. Braun and Truan influenced values and

2   guidelines set for asbestos exposure. The developers of such standards failed to lower the

3   maximum exposure limits because a cancer risk associated with asbestos inhalation had not

4   been proven.

5         u.     In furtherance of the conspiracy, in 1967, Q.A.M.A. conspirators decided at their

6   trade association meeting that they would intentionally mislead consumers about the extent of

7   risks involved in inhalation of asbestos products.

8         v.     In furtherance of the conspiracy, in 1952, a symposium regarding the health

9   effects of asbestos was held at the Saranac Laboratories. The following conspirators were in

10  attendance: MET LIFE, Dr. Lanza, MANVILLE; T&N, RAYBESTOS (now RAYMARK), and

11  Q.A.M.A. members by way of their agents, including Mr. Cartier; Mr. Sabourin, and

12  Mr. LaChance.

13        w.     At the 1952 Saranac meeting, the occurrence of lung cancer and asbestosis in

14  product users and the carcinogenic properties of all fiber types of asbestos were discussed. In an

15  affirmative attempt to mislead the public about the extent of health risks associated with

16  asbestos, and in an effort to fraudulently conceal those risks from the public, these conspirators

17  conspired to prevent publication of the record of this 1952 Saranac Symposium, and it was not

18  published. In addition, the conspirators induced Dr. Vorwald not to communicate the results of

19  his and Dr. Gardner's animal studies showing excess cancers in animals, which thereby

20  fraudulently misrepresented existing secret data, which could not be publicized owing to the

21  secrecy provisions contained in the 1936 Saranac agreement heretofore described.

22        x.     The following co-conspirators were some of the members of the trade

23  organization known as the ATI: Asten-Hill Manufacturing Co.; RAYBESTOS (now

24  RAYMARK); MANVILLE; H.K. Porter; T&N; Asbestos Textile Corporation, Inc. (GATKE);

25  National Gypsum; and Uniroyal, Inc., individually and through its alter-egos, CDU Holding

26  Company, Uniroyal Holding Company and Uniroyal Goodrich Tire Company.

Page 19 - SECOND AMENDED COMPLAINT

BRAYTON◆PURCELL, LLP
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR  97205
Telephone (503) 295-4931; Fax (503) 241-2573

1        y.      In furtherance of the forgoing conspiracy, in 1947 these conspirators, members of

2  the ATI, received a report, entitled "Report of Preliminary Dust Investigation For Asbestos

3  Textile Institute" and dated June 1947, from industrial hygienist W.C.L. Hemeon (Hemeon)

4  regarding asbestos, which indicated that a re-evaluation of the then-existing threshold values for

5  asbestos exposure was necessary. The report stated that the information then available "does not

6  permit complete assurance that five million is thoroughly safe nor has information been

7  developed permitting a better estimate of safe dustiness." The report also stated that "the

8  elimination of future asbestosis depends upon the degree of [dust] control effected now." These

9  conspirators caused the Hemeon report not to be published and thereby fraudulently concealed

10  material facts about asbestos exposure from the public and affirmatively misrepresented to the

11  public and the class of persons exposed to asbestos that the then-existing published threshold

12  values for asbestos were acceptable. Thereafter, and on a continuing basis, these conspirators

13  withheld this and additional material information on asbestos dust threshold values from the

14  ACGIH, thereby purposefully further influencing evaluations of their TLV for asbestos exposure.

15  Other conspirators also discouraged, on an ongoing basis, reevaluation of the TLV and actively

16  attempted to influence the value of the asbestos guideline by deliberately concealing and

17  suppressing data available to them regarding the full scope of the health effects associated with

18  the inhalation of asbestos fibers and the inadequacies of the TLV for protection of workers.

19        z.      In furtherance of the forgoing conspiracy, members of the ATI formed the Air

20  Hygiene Committee, which began meeting as early as 1952. Following are some members of the

21  ATI Air Hygiene Committee: American Asbestos Textile Corp., Asten-Hill Manufacturing

22  Company, Johns-Manville, Small & Parkes, Southern Asbestos Company, and Union Asbestos

23  & Rubber Company. In approximately 1956, D.R. Holmes, of Asten-Hill Manufacturing, was

24  made chairman of the Air Hygiene Committee, after having previously served in lesser positions

25  on the ATI committee. On October 9, 1952, this committee discussed, *inter alia*, establishing

26  industry-wide applications of dust control, medical practices, and industrial hygiene techniques.

Page 20 - SECOND AMENDED COMPLAINT
J:\OR\104683\Pld\Cmp01-2nd amended.wpd

BRAYTON❖PURCELL, LLP
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR  97205
Telephone (503) 295-4931; Fax (503) 241-2573

1    The committee also discussed the suspect relation of asbestos to cancer. During its June 10, 1953

2    meeting, the committee took steps toward creating an industry-wide method of dust sampling and

3    medical evaluation. On September 9, 1953, the committee discussed in detail the causes and

4    symptoms of asbestosis and acknowledged that increased exposure to asbestos fiber increased the

5    risk of developing asbestosis. The committee discussed the option of "job transfer as a means of

6    prevention." On October 6, 1954, the committee discussed the relationship between exposure to

7    asbestos and cancer and the data available showing that asbestos causes lung cancer. At the

8    March 11, 1955 meeting, the committee again discussed the medical aspects of asbestosis. The

9    committee took steps toward developing a program that would provide for the accumulation and

10    exchange of disease experience of the member companies. Members also established that they

11    should assign only those workers without respiratory problems to positions in which they would

12    be exposed to asbestos. In another meeting in 1955, the committee considered a Saranac

13    Laboratory research proposal pertaining to the relationship between pulmonary cancer and

14    asbestosis. The committee noted that there are several articles tying the two together and

15    suggested enlisting the financial help of other sectors of the asbestos industry in order to fund the

16    Saranac research project. The committee recommended that all members of the ATI participate in

17    the study, which would be undertaken in order to assist in determining the ATI members'

18    liability in occupational disease cases. Asten-Hill Manufacturing, through its representatives

19    including D.R. Holmes, participated in the Air Hygiene Committee meetings discussed above

20    and others not discussed.

21        aa.    In furtherance of the forgoing conspiracy, on June 8, 1955, the Board of

22    Governors of the ATI met and discussed the Saranac Laboratory research proposal. The ATI

23    disapproved of the autopsy portion of the proposed Saranac study, because that portion of the

24    study was an investigation of the carcinogenic capabilities of asbestos. Asten-Hill

25    Manufacturing, through its representatives including D.R. Holmes, participated in the ATI

26    meeting discussed above and others not discussed.

Page 21 - SECOND AMENDED COMPLAINT
    J:\OR\104683\Pld\Cmp01-2nd amended.wpd

BRAYTON✥PURCELL, LLP
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR 97205
Telephone (503) 295-4931; Fax (503) 241-2573

1      bb.     In furtherance of the forgoing conspiracy, on September 7, 1955, the ATI Air

2   Hygiene Committee Meeting met with representatives of the Q.A.M.A. Mr. Sabourin, of the

3   Q.A.M.A. discussed the incidence of asbestosis in its medical clinics and noted that the major

4   health problems of the asbestos mining industry pertained to the relationship between exposure

5   to asbestos and heart difficulties and cancer. Asten-Hill Manufacturing, through its

6   representatives including D.R. Holmes, participated in this Air Hygiene Committee meeting.

7      cc.     In furtherance of the forgoing conspiracy, on March 7, 1956, the Board of

8   Governors of the ATI met and discussed a report issued by Dr. Hueper, Chief of the

9   Environmental Cancer section of the National Cancer Institute, National Institute of Health,

10   entitled, "Public Health Monograph #36, A Quest Into the Environmental Causes of Cancer of

11   the Lung," which addresses the relationship between asbestosis and lung cancer. The ATI took

12   steps toward initiating a "program of investigation and publicity to counteract the unfavorable

13   publicity presently directed to the asbestos industries as a result of the work of Dr. Hueper." This

14   program was designed to corrupt medical and consumer understanding and awareness of the

15   dangers of asbestos known to members of the ATI. The ATI decided to enlist the assistance of

16   the Industrial Hygiene Foundation in this effort. The ATI Air Hygiene Committee also met on

17   March 7, 1956 to discuss the issue of the relationship between asbestosis and cancer. The

18   Committee discussed the article by Dr. Hueper in detail, including Dr. Hueper's conclusions that

19   Asbestosis-Cancer can be found after exposure to asbestos of as little as six (6) months, that all

20   workers in the asbestos industry are susceptible, and that Asbestosis-Cancer may be found in

21   person living in the area of an asbestos plant. Dr. Kenneth Smith, Medical Director of Johns-

22   Manville, recommended "very strongly" that the ATI begin a study, through the IHF, of the

23   relationship between lung cancer and asbestosis, "in order that [the ATI] could procure

24   information which would combat current derogatory literature now being circulated throughout

25   the United States and Canada." Dr. Smith advised the ATI that he had no evidence that there is

26   not a relationship between asbestosis and cancer. On March 8, 1956, the General Meeting of the

Page 22 - SECOND AMENDED COMPLAINT

BRAYTON◆PURCELL, LLP
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR  97205
Telephone (503) 295-4931; Fax (503) 241-2573

1   ATI convened, at which meeting the ATI approved an investigation into "the possibility of more

2   concerted action designed to refute the work of Dr. Hueper." This project was assigned to the Air

3   Hygiene Committee, under the leadership of D.R. Holmes of the Asten-Hill Manufacturing. The

4   Air Hygiene Committee was assigned the task of conducting a preliminary investigation to

5   determine whether a study regarding the relationship between asbestosis and lung cancer should

6   be conducted. On March 7, 1957, the Air Hygiene Committee decided to discontinue

7   investigation into the relationship between exposure to asbestos and lung cancer. The Committee

8   rejected the ATI's Proposed Epidemiological Study of Lung Cancer in Asbestos Workers,

9   because, among other reasons, such a study would be costly, and "there [was] a feeling among

10  certain members that such an investigation would stir up a hornet's nest and put the whole

11  industry under suspicion." This decision was presented to and approved by the Board of

12  Governors of the ATI on March 7, 1957. This resulted in fraudulently concealing from the public

13  material facts regarding asbestos exposure and also constituted an affirmative misrepresentation

14  of the then-existing knowledge about asbestos exposure and lung cancer. Asten-Hill

15  Manufacturing, through its representatives including D.R. Holmes, participated in the Air

16  Hygiene Committee and ATI Board of Governors and General meetings discussed above and

17  others not discussed.

18          dd.     In furtherance of the forgoing conspiracy, on June 4, 1956, the Air Hygiene

19  Committee met and discussed a recent legal case in Lancaster Pennsylvania, in which a state

20  referee decided the case in favor of the employee on the basis of finding an asbestosis-cancer

21  relationship.

22          ee.     Asten-Hill Manufacturing, through its representative J.G. Schoepf, participated in

23  the General Meeting of the ATI, Twentieth Anniversary Celebration on October 9, 1964.

24          ff.     In furtherance of the forgoing conspiracy, in 1953, co-conspirator National

25  Gypsum, through its agents, in response to an inquiry from the Indiana Division of Industrial

26  Hygiene regarding health hazards of asbestos spray products, refused to mail a proposed response

Page 23 - SECOND AMENDED COMPLAINT
J:\OR\104683\Pld\Cmp01-2nd amended.wpd

1   to that division indicating that respirators should be worn by applicators of the products. National

2   Gypsum's and conspirators' response distorted and fraudulently misrepresented the need for

3   applicators of asbestos spray products to wear respirators and fraudulently concealed from such

4   applicators the need for respirators and thereby misrepresented the risks associated with asbestos

5   exposure.

6        gg.    In furtherance of the forgoing conspiracy, in 1955, conspirator MANVILLE,

7   through its agent Dr. Kenneth Smith, caused to be published in the AMA Archives of Industrial

8   Health, an article entitled "Pulmonary Disability in Asbestos Workers." This published study

9   materially altered the results of an earlier study in 1949 concerning the same set of workers. This

10   alteration of Dr. Smith's study constituted a fraudulent and material misrepresentation about the

11   extent of the risk associated with asbestos inhalation.

12        hh.    In furtherance of the forgoing conspiracy, in 1955, the National Cancer Institute

13   held a meeting at which conspirator MANVILLE, individually and as an agent for other co-

14   conspirators, and Dr. Vorwald, as agent of co-conspirators, affirmatively misrepresented that

15   there was no existing animal studies concerning the relationship between asbestos exposure and

16   cancer, when, in fact, the conspirators were in secret possession of several suppressed studies and

17   data which demonstrated that positive evidence did exist.

18        ii.    In furtherance of the forgoing conspiracy, in 1964, conspirators who were

19   members of the ATI met to formulate a plan for rebutting in concert the association between lung

20   cancer and asbestos exposure that had been recently published by Dr. Irving J. Selikoff of Mount

21   Sinai Research Center. Thereafter, these members of the ATI embarked upon a campaign to

22   further misrepresent the association between asbestos exposure and lung cancer.

23        jj.    Conspirators the Mellon Institute and the IHF were a research institute whose

24   functions included involvement in research regarding the health effects of inhaling asbestos dust.

25        kk.    Beginning in the early 1940's, the IHF was involved in a study by Hemeon entitled

26   Report of Preliminary Dust Investigation for Asbestos Textile Institute, June 1947. This study

Page 24 - SECOND AMENDED COMPLAINT

BRAYTON❖PURCELL, LLP
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR  97205
Telephone (503) 295-4931; Fax (503) 241-2573

1    was done in connection with members of the ATI. This study determined that workers exposed to

2    less asbestos than the value of then-existing guidelines were nonetheless developing asbestos-

3    related injury and disease. As a part of the conspiracy, the IHF suppressed and never published

4    this study.

5        ll.      Beginning in at least the 1940's, the IHF compiled and published the Industrial

6    Hygiene Digest, which provided literature abstracts and industrial health news. The March, 1947

7    issue of the Industrial Hygiene Digest contained reviews of several articles about asbestos,

8    including Asbestos Dust, which called attention to the hazards of exposure to asbestos dust. The

9    January, 1950 issue of the Industrial Hygiene Digest reviewed an article entitled, Asbestosis: VI

10   Analysis of Forty Necropsied Cases, by K.M Lynch and W.M. Cannon. Among the articles

11   reviewed in the September, 1950 issue of the Industrial Hygiene Digest, was an article discussing

12   the history and causes of asbestosis, entitled, Asbestosis, by H. Wyers. The September, 1952

13   issue of the Industrial Hygiene Digest reviews an article by R. Stoll, R. Bass, and A.A. Angrist,

14   entitled Asbestosis associated with Bronchiogenic Carcinoma. The June, 1953 issue of the

15   Industrial Hygiene Digest reviewed two articles relating to asbestos, entitled, The Clinical

16   Picture and Pathology of Asbestasis and Lung Carcinoma caused by Asbestos Inhalation. The

17   July, 1955 issue of the Industrial Hygiene Digest reviewed an article relating to asbestos, entitled,

18   Primary Cortical-Cell Tumor of the Peritoneum in a Case of Asbestosis, by F. Leicher. An article

19   by R. Doll, entitled Mortality from Lung Cancer in Asbestos Workers, was reviewed in the

20   September, 1955 issue of the Industrial Hygiene Digest. This article concluded that lung cancer is

21   a specific hazard of asbestos workers and that the average risk among men employed for 20 years

22   or more has been on the order of ten times that experienced by the general population. The

23   September 1956 issue of the Industrial Hygiene Digest reviewed three asbestos-related articles,

24   entitled, A Study of Respiration in Pulmonary Asbestosis; Asbestosis: Report of a Case; and New

25   Viewpoints on Pulmonary Cancer in Asbestos Workers. All of the above, as well as other, issues

26   of the Industrial Hygiene Digest were made available to members of the IHF and the ATI.

Page 25 - SECOND AMENDED COMPLAINT

BRAYTON❖PURCELL, LLP
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR  97205
Telephone (503) 295-4931; Fax (503) 241-2573

1    mm.    Beginning in the mid 1950's, the IHF and the Mellon Institute were involved in

2    the publication of works by Drs. Braun and Truan entitled An Epidemiological Study of Lung

3    Cancer in Asbestos Miners. In its original, unedited form in September, 1957, this study had

4    concluded that workers with asbestosis had an increased incidence of lung cancer and that the

5    Canadian government had been under-reporting cases of asbestosis. The final, published version

6    of this study in June, 1958, deleted the conclusion that workers with asbestosis suffered an

7    increased incidence of lung cancer and that the Canadian government had been under-reporting

8    asbestosis cases. The IHF and the Mellon Institute conspired with the members of the Q.A.M.A.

9    and their legal counsel, Ivan Sabourin, and other conspirators to delete the above-described

10    information regarding asbestos and cancer.

11    nn.    The above-described actions of the IHF and the Mellon Institute constituted

12    intentional deception and fraud in actively misleading the public about the extent of the hazards

13    connected with breathing asbestos dust.

14    oo.    The above-described conspiratorial and fraudulent actions of the IHF and the

15    Mellon Institute substantially contributed to delay or otherwise retard the development of

16    knowledge about the hazards of asbestos and thereby substantially contributed to injuries

17    suffered by the plaintiff.

18    pp.    All conspirators identified above approved and ratified and furthered the previous

19    conspiratorial acts of all conspirators, including MANVILLE, RAYBESTOS (now RAYMARK),

20    Dr. Lanza, and MET LIFE, and all the alleged co-conspirators, during the dates and in

21    circumstances set forth above, acted as agents and co-conspirators of the other conspirators, each

22    of whom never withdrew from the referenced conspiracy.

23    qq.    In furtherance of the referenced conspiracy and its purposes, and RAYMARK's

24    fraud, concealment, suppression, and conspiratorial misconduct and of the referenced

25    conspirators, and each of them, as herein set forth, RAYMARK's President and/or other senior

26    executives corresponded with other senior executives of RAYMARK's co-conspirators, which

Page 26 - SECOND AMENDED COMPLAINT

J:\COR\104683\Pld\Cmp01-2nd amended.wpd

BRAYTON❖PURCELL, LLP
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR  97205
Telephone (503) 295-4931; Fax (503) 241-2573

1   series of correspondence and related documents and papers are commonly referenced as "The

2   Sumner Simpson Papers."

3       rr.    In furtherance of the referenced conspiracy and its purposes, and of the fraud,

4   concealment, suppression, and conspiratorial misconduct of the members of the ATI as herein set

5   forth, the ATI and the IHF kept minutes of their regular meetings, discussions, resolutions, and

6   related actions, recorded in "The ATI Minutes."

7                           21.

8       The defendants and conspirators made representations to the public and/or to plaintiff and

9   others concerning asbestos-containing products, including:

10       a.    the statements and assertions set forth and summarized in the foregoing

11   paragraphs;

12       b.   that asbestos in commercially used insulation products was not hazardous (this

13   statement was known to be false by the defendants and conspirators);

14       c.   that the amount of asbestos in the air sufficient to cause disease was five million

15   particles per cubic foot (this statement was known to be false by the defendants and

16   conspirators);

17       d.   that asbestos does not cause cancer (this statement was known to be false by the

18   defendants and conspirators);

19       e.   that the defendants' and others' asbestos-containing products were safe when used

20   as intended;

21       f.   that the defendants' and others' asbestos-containing products required no special

22   handling, equipment, or personal protection to be safely used; and

23       g.   the defendants and conspirators actively and fraudulently concealed facts from the

24   plaintiff and others including, but not limited to:

25       1.   that there are no safe levels of exposure to asbestos;

26       2.   that asbestos-related disease is permanent, insidious, and incurable;

BRAYTON♦PURCELL, LLP
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR  97205
Telephone (503) 295-4931; Fax (503) 241-2573

1    3.    that asbestos-related clinical disease is entirely preventable;

2    4.    that asbestos causes various forms of cancer, including an invariably fatal

3         cancer called mesothelioma;

4    5.    that individuals should protect themselves from breathing asbestos dust

5         whenever possible;

6    6.    the extent of asbestos-related disease in exposed populations;

7    7.    information regarding the levels of airborne asbestos which can cause

8         disease;

9    8.    their substantial experience with workers' compensation claims related to

10        asbestos exposure;

11    9.    that asbestos products require special equipment and procedures for proper

12        handling; and

13    10.    that every preventable exposure to asbestos should be prevented.

14                        22.

15        Further, the defendants and conspirators knew that their representations and statements

16    were false and that by their acts and omissions they were actively, overtly, tacitly, and otherwise

17    fraudulently conducting their business and affairs so as to conceal and suppress adverse

18    information regarding the true health affects of asbestos including the facts set forth above. The

19    defendants and conspirators made the false statements and concealed the information with the

20    intent to deceive consumers, the public, customers, tradesmen, and others not involved in the

21    conspiracy. Plaintiff and others reasonably relied both directly and indirectly on the foregoing

22    false statements, acts, or purposeful omissions, and their lack of knowledge resulting from the

23    defendants' and conspirators' fraudulent concealment caused plaintiff's exposure and asbestos-

24    related injuries and damages as more fully set forth herein.

25                        23.

26        The asbestos-containing products that defendants and conspirators manufactured,

Page 28 - SECOND AMENDED COMPLAINT
J:\OR\104683\Pld\Cmp03-2nd amended.wpd

BRAYTON✦PURCELL, LLP
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR  97205
Telephone (503) 295-4931; Fax (503) 241-2573

1    marketed, distributed, sold and otherwise supplied were defective; plaintiff was exposed to

2    asbestos from the defendants' and conspirators' products which caused plaintiff's asbestos-

3    related injuries as more fully set forth in the foregoing paragraphs.

4                                              24.

5           Each of the conspirators aided, commanded, advised, countenanced, or provided

6    substantial assistance to the other conspirators and or to defendants in accomplishing their

7    tortious result and their breach of duties to the public, consumers, and the plaintiff.

8                                              25.

9           The tortious result accomplished by the conspirators was done for each conspirator's and

10   defendant's benefit, and each conspirator and defendant approved of the tortious result after and

11   as it was accomplished.

12                                             26.

13          MET LIFE was an active participant in the foregoing conspiracy and benefitted thereby.

14   MET LIFE aided and participated in the conspiracy and benefitted from their involvement as

15   enumerated in the following non-exclusive list:

16          a.      by providing workers' compensation insurance to the co-conspirators;

17          b.      by providing life insurance for employees of the co-conspirators;

18          c.      providing health insurance or health care for the employees of the co-conspirators;

19          d.      by providing health information and resources;

20          e.      by purchasing substantial stock in asbestos-related companies, including stock of

21   co-conspirators;

22          f.      by developing information by which asbestos-related claims for compensation

23   could be defeated; and

24          g.      by collecting premiums on policies provided, for which they paid no benefits,

25   despite receiving legitimate, valid, and covered claims.

26   ///

Page 29 - SECOND AMENDED COMPLAINT

J:\ORU\04683\PldCmp01-2nd amended.wpd

BRAYTON❖PURCELL, LLP
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR  97205
Telephone (503) 295-4931; Fax (503) 241-2573

1                                 27.

2        MET LIFE acted in concert with conspirators and/or defendants and pursuant to a

3   common design, as previously described, to cause injury to plaintiff.

4                                 28.

5        MET LIFE knew that the conduct of MANVILLE, RAYBESTOS (now RAYMARK),

6   USG, American Brakeblock Corporation (now PNEUMO ABEX), T&N, and the other

7   conspirators was coercive, fraudulent, and deceitful towards others (including plaintiff) and that

8   conspirators' conduct was a breach of dut(y)(ies) owed plaintiff; and MET LIFE gave

9   substantial assistance and encouragement to MANVILLE and the other conspirators in breaching

10   their duties to plaintiff and others.

11                               29.

12        The tortious result accomplished by the conspirators was done for MET LIFE's benefit,

13   and MET LIFE approved of the tortious result after and as it was accomplished.

14                               30.

15        Plaintiff was insured, directly or indirectly, by MET LIFE and as such was owed a

16   fiduciary duty by MET LIFE which duty was breached by its foregoing conduct and conspiracy,

17   which thereby caused plaintiff's asbestos-related injuries.

18                               31.

19        Additionally and alternatively, as a direct result of MET LIFE's actions and omissions,

20   plaintiff, her agents and/or employers, and/or the general public were unaware of the true and full

21   dangers of asbestos, plaintiff was deprived of the opportunity to protect himself from the risk of

22   being exposed to asbestos, and plaintiff was denied the reasonable opportunity to secure that

23   others take precautions against the dangers of asbestos, which caused plaintiff's damages herein.

24   ///

25   ///

26   ///

Page 30 - SECOND AMENDED COMPLAINT
J:\OR\104683\Pld\Cmp01-2nd amended.wpd

BRAYTON◆PURCELL, LLP
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR  97205
Telephone (503) 295-4931; Fax (503) 241-2573

1       ## FIRST CLAIM FOR RELIEF

2                    **(Product Liability)**

3                              32.

4           AS AND FOR A SEPARATE AND DISTINCT FIRST CLAIM FOR RELIEF BASED

5       UPON PRODUCT LIABILITY, PLAINTIFF COMPLAINS OF CONSPIRATORS

6       IDENTIFIED IN PARAGRAPH 16 AND THEIR "ALTERNATE ENTITIES," AND

7       DEFENDANTS AND THEIR "ALTERNATE ENTITIES" WHO ARE NAMED IN THIS

8       COMPLAINT, AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

9                              33.

10          Plaintiff realleges paragraphs 1 through 31.

11                             34.

12          At all material times, defendants' and conspirators' asbestos-containing products to

13      which plaintiff was exposed were unreasonably dangerous and defective under Oregon Consumer

14      Safety laws, including Oregon Revised Statutes §30.920, in one or more of the following

15      particulars:

16          a.    Defendants' and conspirators' asbestos-containing products were capable of

17      causing incurable pulmonary disease, including, but not limited to, mesothelioma, pleural

18      plaques, pathologic and clinical asbestosis and/or cancer if inhaled by individuals, including

19      plaintiff, in their workplaces or home environment, including those set forth above.

20          b.    Defendants' and conspirators' asbestos-containing products failed to sufficiently,

21      or at all, warn and/or instruct the public and individual workers, including plaintiff, of the harm

22      caused by exposure to said products.

23          c.    Defendants' and conspirators' asbestos-containing products failed to sufficiently

24      advise or warn the public and individual workers, including plaintiff, to utilize proper respiratory

25      protection or other protective equipment, resulting in their exposure to airborne asbestos fibers

26      within their working environment.

Page 31 - SECOND AMENDED COMPLAINT

J:\OR\104683\Pld\Cmp01-2nd amended.wpd

BRAYTON◆PURCELL, LLP
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR  97205
Telephone (503) 295-4931; Fax (503) 241-2573

1      d.     Defendants' and conspirators' asbestos-containing products were defectively

2  designed to require the replacement of asbestos-containing components with asbestos-containing

3  replacement parts.

4                                 35.

5      Defendants, conspirators, and their "alternate entities," and each if them, knew and

6  intended that the above-referenced asbestos and asbestos-containing products would be used by

7  the purchaser or user, including plaintiff, without inspection for defects therein or in any of their

8  component parts, and without the purchaser's or user's knowledge of the hazards involved in

9  such use.

10                              36.

11      Said asbestos and asbestos-containing products were defective and unsafe for their

12  intended purpose in that the inhalation of asbestos fibers caused serious disease, including, but

13  not limited to, incurable lung scarring and/or cancers, and/or death. The defect existed in the said

14  products at the time they left defendants' or conspirators' possession. Said products did, in fact,

15  cause personal injuries and lung damage, among other injury and damage, to exposed persons,

16  including plaintiff, while being used in a reasonably foreseeable manner, thereby rendering them

17  defective, unsafe, and dangerous for use.

18                             37.

19      Exposed persons, including plaintiff, did not know of the substantial danger of using said

20  products. Said dangers were not readily recognizable by "exposed persons," including plaintiff.

21  Defendants and conspirators further failed to adequately warn plaintiff and others similarly

22  situated of the risks to which they were exposed.

23                             38.

24      The asbestos and asbestos-containing products manufactured, distributed, and/or supplied

25  by defendants and conspirators were intended to and did reach plaintiff without

26  substantial change.

J:\OR\104683\Pld\Cmp01-2nd amended.wpd

BRAYTON✦PURCELL, LLP
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR  97205
Telephone (503) 295-4931; Fax (503) 241-2573

1          39.

2          Through their conduct described in paragraphs 17 through 31, the conspirators conspired

3    and aided in injuring plaintiff as described above in the First Claim for Relief.

4                              **SECOND CLAIM FOR RELIEF**

5                                    **(Negligence)**

6                                         40.

7          AS AND FOR A SEPARATE AND DISTINCT SECOND CLAIM FOR RELIEF FOR

8    NEGLIGENCE, PLAINTIFF COMPLAINS OF CONSPIRATORS IDENTIFIED IN

9    PARAGRAPH 16 AND THEIR "ALTERNATE ENTITIES," AND DEFENDANTS AND

10   THEIR "ALTERNATE ENTITIES" WHO ARE NAMED IN THIS COMPLAINT, AND EACH

11   OF THEM, AND ALLEGES AS FOLLOWS:

12          41.

13          Plaintiff realleges paragraphs 1 through 31.

14          42.

15          Defendants and conspirators had a duty to use reasonable or ordinary care to avoid

16   harming plaintiff in the manufacture, distribution, supply, and/or otherwise making available of

17   their asbestos and asbestos-containing products.

18          43.

19          Defendants and conspirators, and each of them, created a foreseeable risk of harm to

20   plaintiff through, among other things, the following conduct, acts, or omissions:

21          a.      In failing to determine the level of airborne asbestos fibers emitted by the products

22   when the products were being used by the end user;

23          b.      In failing to conduct tests to determine the amount of asbestos to which plaintiff,

24   or similarly situated workers, would be exposed, when engaging in the use of the product(s);

25          c.      In failing to caution or warn individual workers, including plaintiff, regarding

26   hazards associated with the use of the product(s);

Page 33 - SECOND AMENDED COMPLAINT

J:\OR\104683\Pld\Cmp01-2nd amended.wpd

**BRAYTON✦PURCELL, LLP**
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR  97205
Telephone (503) 295-4931; Fax (503) 241-2573

1        d.      In failing to provide sufficient or adequate warnings and/or instructions of the

2 harm caused by exposure to defendants' and conspirators' asbestos-containing

3 products when they knew or should have known of that harm;

4        e.      In failing to withdraw or otherwise recall asbestos-containing products from the

5 market prior to plaintiffs' exposure, when they knew or should have known, as set forth herein, of

6 its dangerous propensities;

7        f.      In designing a product requiring asbestos-containing components, and designing a

8 product requiring the replacement of such asbestos-containing components with other asbestos-

9 containing components.

10                          44.

11       Through their conduct as described herein, defendants and conspirators caused plaintiff to

12 be exposed to asbestos and asbestos-containing products, which exposure caused bodily injury,

13 including incurable pulmonary disease, including, but not limited to, mesothelioma, pleural

14 plaques, and/or pathologic and clinical asbestosis. Defendants and conspirators knew or should

15 have known, as set forth in paragraph 47, that exposure to their asbestos and asbestos-containing

16 products created a risk of asbestos-related injury and/or disease.

17                          45.

18       Because of defendants' and conspirators' knowledge, and/or what they should have

19 known, as set forth in paragraph 47, of the risks posed by exposure to and contact with their

20 products, defendants' and conspirators' conduct as described herein was unreasonable in light of

21 the risks involved.

22                          46.

23       Defendants' and conspirators' conduct as described herein caused plaintiff's injuries and

24 damages as set forth herein, in that, among other things, plaintiff was within the class of persons

25 and plaintiff's injury was within the general type of potential incidents and injuries that rendered

26 defendants' and conspirators' conduct negligent.

Page 34 - SECOND AMENDED COMPLAINT

J:\OR\104683\Pld\Cmp01-2nd amended.wpd

BRAYTON◆PURCELL, LLP
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR  97205
Telephone (503) 295-4931; Fax (503) 241-2573

47.

Medical and scientific literature describing the dangers and toxicity of asbestos fibers dates back to before the turn of the twentieth century. By 1930, it was conclusively established and made known to the medical and industrial communities that asbestos causes asbestosis. As early as 1934, the members of the asbestos industry became aware that even persons not working directly with asbestos and asbestos-containing products suffered harm due to exposure to asbestos. As early as 1935, sectors of the state and federal government began voicing their concern, through publication of special and health bulletins, about the dangers of asbestos. Inquiry into the link between asbestos and lung cancer became public knowledge by 1935, and in 1949 it was established and made known that asbestos is a cause of lung cancer. By 1960, it was conclusively established and made known to the medical and industrial communities that asbestos causes mesothelioma. Beginning as early as 1930 and continuing for at least four decades, there was a significant amount of study and literature commissioned and written by and for the industrial community and published in industry journals. By 1963, there were over 300 articles in English regarding asbestos related illness available.

The Oregon Industrial Accident Commission Safety Code for the Prevention and Control of Occupational Disease (adopted December 15, 1945, revised September 1, 1949) lists asbestos as an atmospheric contaminant against exposure to which precautions should be taken.

Beginning in approximately the early 1960's warning labels regarding the hazards of asbestos were placed on some asbestos-containing products.

48.

Through their conduct described in paragraphs 17 through 31 the conspirators conspired and aided in injuring plaintiff as described above in the Second Claim for Relief.

/ / /

/ / /

/ / /

Page 35 - SECOND AMENDED COMPLAINT
J:\OR\104683\Pld\Cmp01-2nd amended.wpd

BRAYTON✤PURCELL, LLP
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR 97205
Telephone (503) 295-4931; Fax (503) 241-2573

## NOTICE OF INTENT TO AMEND TO INCLUDE PUNITIVE DAMAGES

49.

Plaintiff incorporates by reference each and every paragraph of this complaint herein.

50.

Plaintiff gives notice of his intent to seek leave of the court to amend his complaint to seek punitive damages against each defendant and each conspirator named in this complaint, according to proof at or before the time of trial.

WHEREFORE, plaintiff prays for judgment against defendants as follows:

1.    For plaintiff's economic damages for past and future doctor, hospital, custodial, hospice, and medical and other expenses, according to law, in an amount according to proof at trial of $200,000.00;

2.    For plaintiff's past and future economic damages for loss of pension, loss of income, impairment of income or wage-earning capacity, and loss of home services, according to law, in an amount according to proof at trial of $200,000.00;

3.    For plaintiff's non-economic damages, according to law, in an amount according to proof at trial of $2,000,000.00;

5.    For plaintiff's costs and disbursements herein; and

6.    For such further and other relief as the Court may deem just and proper according to proof at trial.

## CERTIFICATION TO COURT

The undersigned attorney certifies upon reasonable knowledge, information and belief, formed after making of such inquiry as is reasonable under the circumstances, that this document is not presented for any improper purpose, that the legal positions contained herein are warranted by nonfrivolous application or modification of existing law, and that the undersigned reasonably

Page 36 - SECOND AMENDED COMPLAINT

J:\ORN104683\Pld\Cmp01-2nd amended.wpd

BRAYTON✦PURCELL, LLP
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR 97205
Telephone (503) 295-4931; Fax (503) 241-2573

1  believe that all allegations will be supported by evidence now or after further investigation and

2  discovery.

3

4       DATED this _15th_ day of August, 2006.

5                              BRAYTON ❖ PURCELL, LLP

6

7                              Scott Niebling, OSB No. 004494
                               sniebling@braytonlaw.com
8                              Trial Attorney: Gilbert L. Purcell, CA SB No. 113603
                               Of Attorneys for Plaintiff
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 37 - SECOND AMENDED COMPLAINT
J:\OR\104683\Pld\Cmp01-2nd amended.wpd

BRAYTON❖PURCELL, LLP
American Bank Building
621 S.W. Morrison Street, Suite 950
Portland OR   97205
Telephone (503) 295-4931; Fax (503) 241-2573

EXHIBIT 1

LaFaye Burkholder v. Asbestos Claims Management Corporation, et al.

| Employer | Location of Employment | Job Title | Dates |
|---|---|---|---|
| Manhattan Shirt Factory, Jesup, GA | Manhattan Shirt Factory, Jesup, GA | Seamstress | Approximately 1948-1950 |
| Unknown | Unknown Shoe Factory, Waycross, GA | Laborer | Approximately 1950-1951 |
| King Edwards Cigar, Waycross, GA | King Edwards Cigar, Waycross, GA | Laborer | Approximately 1952-1953 |
| Isaac's Dry Cleaning, Klamath Falls, OR | Isaac's Dry Cleaning, Klamath Falls, OR | Seamstress | Approximately 1970-1974 |

## PARA-OCCUPATIONAL EXPOSURE:

Plaintiff currently alleges exposure to asbestos through her father, Ervin Franklin, mother, Louise Franklin, sister, Grace Hunter, and husband, Victor Burkholder.

Plaintiff's father, Ervin Franklin's work history:

| Employer | Location of Employment | Job Title | Dates |
|---|---|---|---|
| JA Jones Construction, Brunswick, GA | JA Jones Construction, Brunswick, GA | Carpenter | Approximately 1942-1945 |

Plaintiff's mother, Louise Franklin's work history:

| Employer | Location of Employment | Job Title | Dates |
|---|---|---|---|
| JA Jones Construction, Brunswick, GA | JA Jones Construction, Brunswick, GA | Burner | Approximately 1942-1945 |

Plaintiff's sister, Grace Hunter's work history:

| Employer | Location of Employment | Job Title | Dates |
|---|---|---|---|
| JA Jones Construction, Brunswick, GA | JA Jones Construction, Brunswick, GA | Welder | Approximately 1942-1945 |

Plaintiff's husband, Victor Burkholder's work history:

| Employer | Location of Employment | Job Title | Dates |
|---|---|---|---|
| United States Air Force | US Air Force - March AFB, Riverside, CA, | Air Traffic Controller | Approximately 1953-1959 |
| | US Air Force - Spain | Air Traffic Controller | Approximately 1959-1962 |
| | US Air Force - Luke AFB, Phoenix, AZ | Air Traffic Controller | Approximately 1962-1965 |
| | US Air Force - Warner Robbins AFB, GA | Air Traffic Controller | Approximately 1965-1968 |
| Klamath Falls High School, Klamath Falls, OR | Klamath Falls High School, Klamath Falls, OR | Maintenance Mechanic | Approximately 1970-1974 |